UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON
CASE NO. 2:25-CV-00042-DCR

DAMIEN CONNER and TAMELA SCOTT                                    PLAINTIFFS

v.

CITY OF COVINGTON; Colonel Brian Valenti;
Doug ULLRICH ; and DOES 1-50 individually and
in official capacities as police officers for the
City Covington inclusive.                                        DEFENDANTS

---

FIRST AMENDED COMPLAINT FOR VIOLATION OF TITLE 42 USC § 1983, *MONELL* CLAIM,
VIOLATION OF KENTUCKY STATUTES, VIOLATION OF COMMON LAW TORTS, AND DAMAGES

JURY TRIAL DEMANDED

---

## INTRODUCTION

1. Rampant violations of excessive use of force and concerns of prejudicial conduct are recurring problems stemming from officers serving with the Covington Police Department, which is deeply affecting the efficiency of the Covington Police Department and threatening the protection of Constitutional Rights for the citizens of Covington, Kentucky.

   **Damien Conner:**

2. Damien was driving to work and was pulled over for a standard traffic violation after being on his phone.

3. Damien was compliant in presenting his license, registration, and insurance.

4. Officer ULLRICH called for backup before asking if Damien C. owned a registered gun, and immediately asked him to get out of the car when Damien C. was confused why there was an issue.

5. Damien was actively trying to de-escalate a confrontation with Officer ULLRICH, and asked why he had to exit his car.

6. Damien was unnecessarily put in handcuffs, grabbed by two officers, and pulled out the window of his car, with the officers claiming he was under arrest for refusing to exit his car and "obstructing police."

7. Damien asks the officers to unbuckle him while he was being forcefully grabbed from the car and communicated that the officers were hurting him, but instead the officers cut his seatbelt off of him.

8. Officer ULLRICH and the other officers involved were not interested in following policy, but rather only interested in imposing unnecessary physical force and authority that had been granted to them without limits by the Covington Police Department.

9. Officer ULLRICH made claims that contradict footage from the body cam, and accusations of a smell of marijuana, of which no proof was confirmed.

   **Tamela Scott:**

10. On or about April 6, 2024, TAMELA SCOTT was serving as the designated driver for her then-boyfriend after a night out in Covington, Kentucky. Before heading home, she stopped at a Taco Bell to get food. While parked in the lot, officers with the Covington Police Department initiated an encounter and requested her identification.

11. TAMELA SCOTT attempted to retrieve her ID from her purse but was hindered by a flashlight being aggressively shined into her vehicle, obstructing her view. She politely asked the officers to redirect the light so she could see inside her purse, but they refused.

12. Rather than allowing her to comply, officers abruptly escalated the situation and reached into her vehicle to grab her arm without warning or justification.

13. Officers then deployed a taser on TAMELA SCOTT multiple times, despite the fact that she posed no threat and had not acted aggressively. This use of force was excessive, unnecessary, and in direct violation of the department's own use-of-force policies.

14. Officer ULLRICH later arrived on the scene and falsely asserted that TAMELA SCOTT was under the influence of drugs or alcohol, despite no evidence to support such claims. She was arrested and charged with several offenses she did not commit.

15. This incident is not isolated. Officer ULLRICH and other members of the Covington Police Department have a documented pattern of falsely alleging the presence of alcohol or marijuana as a pretext to detain and arrest individuals—particularly in cases involving Black citizens like TAMELA SCOTT.

16. TAMELA SCOTT was charged with multiple offenses as a result and was forced to defend herself in court for months as a result.

17. This Complaint, body worn camera footage, and other discoverable evidence clearly demonstrate that Damien's Constitutional Rights were severely violated by the intentional and negligent actions of Covington Police Department and its agents.

## JURISDICTION

18. This action arises under Title 42 of the United States Code, Section 1983. Title 28 of the United States Code, Sections 1331 and 1343 confers jurisdiction upon this Court. The unlawful acts and practices alleged herein occurred in Covington, Kentucky, which is within this judicial district. Title 28 of the United States Code Section 1391(b) confers venue upon this Court.

## PARTIES

19. Plaintiff DAMIEN CONNER (hereinafter referred to as "PLAINTIFF") is and at all times herein mentioned is a citizen of the United States and a local resident.

20. Defendant CITY OF COVINGTON (hereinafter referred to as "CITY") is and all times mentioned herein a municipal corporation, duly authorized to operate under the laws of the Commonwealth of Kentucky. Under its supervision, the CITY operates the Covington Police Department. The Covington Police Department employ's police officers and is responsible for the actions of its employees. PLAINTIFF believes that the CITY is legally responsible and liable for the incident, injuries and damages herein set forth. The CITY proximately caused injuries and damages because of the intentional and/or negligent actions of one or more of its employees, it breached its duty to PLAINTIFF to provide safety and security for the public, violated public policy when its employees used excessive force against PLAINTIFF. The COUNTY is liable for the actions of its employees, through vicarious or imputed liability and *Respondeat Superior*.

21. Defendant OFFICER D. ULLRICH  (hereinafter referred to as "ULLRICH ") is and all times mentioned herein is an adult and at all times herein mentioned is a citizen of the United States and a resident of Kentucky. ULLRICH  was employed as a full-time employee of the CITY as a police officer. At all relevant times ULLRICH  was under an oath as a law enforcement officer to serve the community; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation and the peaceful against violence or disorder; and to respect the constitutional rights of all to liberty, equality, and justice.

22. **DEFENDANT COLONEL BRIAN VALENTI** (hereinafter referred to as "VALENTI") is and all times mentioned herein is an adult and at all times herein mentioned is a citizen of the United States and a resident of Kentucky. VALENTI was employed as a full-time employee of the CITY as a police officer. At all relevant times VALENTI was under an oath as the chief of police to serve the community; to safeguard lives and property; to protect the innocent against

deception, the weak against oppression or intimidation and the peaceful against violence or disorder; and to respect the constitutional rights of all to liberty, equality, and justice.

23. Plaintiff TAMELA SCOTT (hereinafter referred to as "SCOTT") is and at all times herein mentioned is a citizen of the United States and a local resident.

24. PLAINTIFF is ignorant of the true names and/or capacities of defendants sued herein as DOES 1 through 50, inclusive, and therefore sue said defendants by such fictitious names. PLAINTIFF will amend this complaint to allege their true names and capacities when ascertained. PLAINTIFF believes and alleges that each defendant is legally responsible and liable for the incident, injuries and damages herein set forth. Each defendant proximately caused injuries and damages because of his/her intentional and/or negligent actions, breach of duty, violation of public policy and/or use of excessive force. Each defendant is liable for his/her personal conduct, vicarious or imputed negligence, fault, breach of duty, whether severally or jointly, or whether based upon agency, employment, ownership, entrustment, custody, care or control upon any other act of omission. PLAINTIFF will ask for leave to amend his complaint subject to further discovery. In engaging in the conduct alleged herein, defendant police officers acted under the color of law and in the course and scope of their employment with the CITY. In engaging in the conduct described herein, Defendant officers exceeded the authority vested in them as police officers, under the United States and Kentucky Constitutions, and as employees of the CITY.

## STATEMENT OF FACTS

### DAMIEN CONNER

25. On the evening of September 23, 2024, PLAINTIFF was driving to work on I 0075 South bound, and actively typing in his phone for directions.

26. PLAINTIFF is an African American male.

27. At approximately 6:38 PM, PLAINTIFF was pulled over for a standard communication device violation.

28. Upon pulling over, PLAINTIFF was compliant in talking to the officer who pulled him over, who was ULLRICH .

29. PLAINTIFF was compliant in searching for and providing his license, registration, and insurance.

30. ULLRICH  went back to his car and ran the license, then proceeded to call a backup officer to the scene; the name of the other present officer is currently unknown.

31. ULLRICH  returned to PLAINTIFF's vehicle and asked if PLAINTIFF carried a gun.

32. PLAINTIFF was confused and stated that he just wanted to get to work, and ULLRICH proceeded to immediately command PLAINTIFF to take his seatbelt off and exit his vehicle, or else he would be taken to jail.

33. PLAINTIFF was confused and said that the officer did not have a reason to ask him to exit.

34. ULLRICH  reached through his open driver's side window and placed PLAINTIFF in handcuffs.

35. ULLRICH  and the other present officer began to forcefully pull PLAINTIFF out of his driver's side window while PLAINTIFF'S seat belt was still on

36. PLAINTIFF begged ULLRICH  to stop and that the officers were hurting him.



Ullrich #1

Timestamp: 1:31

37. PLAINTIFF asked why the officers would do that to him, and asked for them to open the driver's side door so he could exit the vehicle.

38. PLAINTIFF asked for his seatbelt to be taken off, however ULLRICH stated that he did not want to take off the handcuffs so the officers cut the seatbelt off of PLAINTIFF.



Ullrich #1

Timestamp: 1:56

39. ULLRICH told PLAINTIFF he had to exit his car because the car smelled like weed, to which he responded that he could not smoke weed because of his employment at a railroad company.

40. ULLRICH has a long history of profiling African Americans.

41. ULLRICH has a long history of wrongfully accusing African Americans of being intoxicated or smelling like marijuana as a means of initiating unconstitutional searches.

42. The CITY and VALENTI were aware of ULLRICH 's long history of such conduct and failed to take any corrective action.

43. The CITY and VALENTI have allowed ULLRICH and other officers to act with impunity and have failed to properly train or supervise their officers in accordance with established policies.

44. Covington Police officers are bound to the Use of Force standards set forth in The CITY's Police Department General Orders ("General Order") issuance.

45. The CITY's General Order asserts that force must be "objectively reasonable," meaning the amount of force that would be used by other reasonable and well-trained officers when faced

with the circumstances that the officer using the force is presented with.

46. Furthermore, a claim of excessive force under the Fourth Amendment requires that a plaintiff demonstrate that they were seized and that the force used in effecting the seizure was objectively unreasonable. *Graham v Connor*, 490 U.S. 386, 4 (1989).

47. Here, none of PLAINTIFF'S actions amounted to conduct that reasonably would warrant the excessive use of force performed by ULLRICH .

48. Nonetheless, ULLRICH  ignored the CITY's General Order, and attempted to pull PLAINTIFF out his driver's side window while PLAINTIFF did not physically take any action to warrant that aggressive use of force, thus violating the General Order.

49.  The CITY's General Order also provides an escalating scale for employing force; under this, Officers "shall not use a more forceful option unless lesser verbal or physical force would be or has been ineffective or inappropriate".

50. Here, ULLRICH  failed to use lesser forms of force, like empty-handed control techniques or explaining the significance of having to ask about the registered gun, thus further violating the CITY's General Order.

51. At 6:57 PM, officers proceeded to arrest and take PLAINTIFF into custody, after violating numerous sections of the CITY's General Order.

52. Throughout this incident, officers blatantly disregarded the CITY's General Order, and substantially deviated from what the CITY's General Order requires.

53. These violations directly caused unnecessary harm to PLAINTIFF.

54. During the incident, ULLRICH  made false claims that PLAINTIFF possessed marijuana, had resisted arrest, and had committed an obstructing emergency responder violation.

55. However, all criminal charges of obstruction and resisting arrest against PLAINTIFF were dismissed; there was no finding of fact that PLAINTIFF possessed marijuana.

56. CITY police officers have a pattern, and practice of using unnecessary and unreasonable forces.

57. CITY has multiple policies that require lawful procedures prior to search and de-escalation prior to the use of force but CITY allows officers to act without reprimand when using excessive force and falsely claiming individuals have committed crimes when they have not.

**STATEMENT OF FACTS**

**TAMELA SCOTT**

58. On or about April 6, 2024, SCOTT was out with her then-boyfriend in Covington, Kentucky. SCOTT remained sober throughout the evening and served as the designated driver.

59. Before heading home, SCOTT drove to a Taco Bell in Covington to pick up food. While parked, she was approached by CITY officers without any indication that she had committed a crime or posed a threat.

60. CITY officers requested SCOTT's identification. SCOTT attempted to comply, but was unable to locate her ID due to the officers shining a flashlight directly into her vehicle, obstructing her ability to see into her purse.

61. SCOTT calmly asked the CITY officers to adjust their flashlight so she could see and comply with their request, but the officers refused to do so.



62. Rather than de-escalate or allow SCOTT to comply, the CITY officers abruptly escalated the

situation and attempted to forcibly grab SCOTT's arm.



63. At all times during the encounter, SCOTT, was non-threatening and did not act aggressively in

any manner.

64. Despite SCOTT's non-threatening behavior, CITY officers deployed a taser on her multiple times. The use of the taser was excessive and wholly unjustified under the circumstances.



65. The CITY officers' use of force violated the Covington Police Department's own policies, as SCOTT posed no threat and was seated, unarmed, and attempting to comply with officer instructions.

66. Officer ULLRICH arrived on the scene after the initial confrontation and falsely claimed that SCOTT was under the influence of drugs or alcohol.

## KYIBRS REPORT: NARRATIVE
### COMMONWEALTH OF KENTUCKY

**SYNOPSIS:**

On 04/06/2024 at approximately 0121 hours, I conducted a traffic stop on OH-KGV2967 for
disregarding the red light at W 5th St / Montgomery St and having extremely dark tinted windows.
Contact was made with the operator, Tamela Scott, who was very uncooperative and refused to
comply with officers commands. Scott was found to be operating the vehicle while under the
influence of alcohol. The passenger, Eddie Curtis, was manifestly under the influence of alcohol
and found to be in possession of marijuana. Alcohol was located in the vehicle.

**INVESTIGATION:**

On 04/06/2024 at approximately 0121 hours, I conducted a traffic stop on OH-KGV2967 for
disregarding the red light at W 5th St / Montgomery St. The vehicle was traveling east on W 5th St
when it came to a red light at W 5th St / Montgomery St. The vehicle stopped, then proceeded
through the light while it was still red. I was unable to determine the total number of occupants in
the vehicle due to the extremely dark-tinted windows. The vehicle continued east on W 5th St at a
rate higher than the posted 25 mph speed limit. A traffic stop was initiated and the vehicle came to
a stop near E 5th St / Greenup St.

I made contact with the operator of the vehicle, Tamela Scott, who had a strong odor of an alcoholic
beverage on her breath as she spoke and had watery eyes. An additional subject, Eddie Curtis, was
seated in the front passenger seat. Scott was asked to provide her license, insurance, and
registration. Scott was extremely uncooperative and refused to provide the documents. I advised
Scott to provide the documents or she would be placed into custody. Scott refused to provide the
documents and was advised to exit the vehicle. Scott refused to exit the vehicle and advised
officers to "make her" get out. Scott refused to comply with officers commands and began to reach
throughout the vehicle, placing officers in reasonable apprehension of imminent physical injury. A
use of force was necessary to place Scott into custody.

Once in custody, Scott became very disorderly while in the roadway yelling and refusing to comply
with officers commands. Spec. Ullrich began to speak to Scott and advised she was manifestly
under the influence of alcohol and drugs (see supplement for further).

The passenger of the vehicle, Eddie Curtis was asked to exit the vehicle so that he could attempt to
obtain transportation home due to his level of intoxication and having a suspended OL. When
Curtis exited the vehicle, a strong odor of marijuana was detected coming from the vehicle. Curtis
was found to have suspected marijuana and a burnt marijuana blunt in his left pants pocket. Curtis
was unable to obtain transportation, and was manifestly under the influence of alcohol to the
degree he was a danger to himself if left alone.

While searching the vehicle, officers located a mixed alcoholic drink in the center cup holder that
was blue in color. Spec. Ullrich used his tint meter and advised the two front windows were 18
percent, and the front windshield was completely tinted.

Scott was transported to St. Elizabeth where she remained uncooperative. Scott was read the
implied consent and refused to submit to a test of her blood.

All evidence was logged at the Covington Police Department, and body camera footage is available
for this incident.

| Page 6 of 7 | Incident Number: 24-015049 | Agency ORI: 0590100 | Badge #: 0296 |

67. These accusations were made without any observable evidence or the administration of a sobriety test. SCOTT was not impaired, and no proof of impairment was ever presented.

68. Based on these false accusations, SCOTT was arrested and charged with multiple offenses that she did not commit.

69. The charges were supported only by fabricated statements made by CITY officers, particularly those made by Officer ULLRICH.

70. As a result of the unlawful arrest and excessive use of force, SCOTT suffered physical injury, emotional distress, reputational harm, and financial consequences.

71. Officer ULLRICH has a known and documented history of falsely claiming that individuals smell of marijuana or alcohol in order to justify unlawful searches, arrests, and criminal charges— particularly targeting Black residents like SCOTT.

72. The CITY is well aware of Officer ULLRICH's long-standing pattern of misconduct, including his repeated use of false claims to initiate baseless charges.

73. Despite this knowledge, the CITY has failed to take any corrective or disciplinary action to prevent Officer ULLRICH from continuing these unconstitutional practices.

74. The CITY's failure to train, supervise, or discipline Officer ULLRICH and other CITY officers reflects a deliberate indifference to the constitutional rights of its residents and a pattern of tolerance toward officer misconduct.

75. SCOTT was forced to litigate this matter in criminal court for six months.

76. As a result of the incident, SCOTT was charged with a felony and was forced to expend significant resources on court appearances, legal representation, and court-ordered trial diversion classes.

77. Even after the initial tase, SCOTT continued to suffer emotional and monetary harm by having to relive the issue during court proceeding.

78. SCOTT completed her trial diversion program in October 2024, after which all charges against her were formally dismissed.

79. SCOTT has suffered physical pain, emotional trauma, reputational damage, and financial loss directly resulting from the false claims and unlawful conduct of CITY and Officer ULLRICH.

## **DAMAGES**

80. PLAINTIFF was physically, mentally, and emotionally injured as a direct and proximate result of the attack on his person, including but not limited to physical injuries wrist and emotional damage resulting in a fear of government officials and post-traumatic stress related illnesses as a consequence of Defendants violations of his federal civil rights under 42 U.S.C. §1983 and the Fourth and Fourteenth Amendment's.

81. PLAINTIFF is entitled to recover damages pursuant to the pain and suffering he endured as a result of his civil rights being violated and the tortious acts by defendant's, inclusive.

82. PLAINTIFF found it necessary to engage the services of private counsel to vindicate his rights under the law. PLAINTIFF is therefore entitled to an award of attorney's fees and/or costs pursuant to statute(s) in the event that they are the prevailing party in this action under 42 U.S.C. §§§§ 1983, 1985-86 and 1988.

**DAMIEN CONNER:**

**FIRST CAUSE OF ACTION**

**(Violation of the Fourth Amendment to the United States Constitution- Excessive Force)**

**(42 U.S.C. § 1983)**

**(PLAINTIFF v. ALL DEFENDANTS)**

83. PLAINTIFF re-alleges and incorporates by reference paragraphs 1 through 49 of this complaint.

84. Defendants' above-described conduct violates PLAINTIFF's right, as provided for under the Fourth and Fourteenth Amendment to the United States Constitution, to be free from excessive and/or arbitrary and/or unreasonable force against him.

85. PLAINTIFF was forced to endure great pain and suffering because of the CITY other DEFENDANTS' conduct.

86. DEFENDANTS acted under color of law by grabbing PLAINTIFF without lawful justification and subjecting PLAINTIFF to excessive force thereby depriving PLAINTIFF of certain constitutionally protected rights, including, but not limited to:

87. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the United States Constitution;

    WHEREFORE, PLAINTIFF prays for relief as hereinafter set forth.


**SECOND CAUSE OF ACTION**

**(Monell Claim: 42 U.S.C. § 1983)**

**(PLAINTIFF v. CITY)**

88. PLAINTIFF re-alleges and incorporates by reference paragraph's 1-49 of this Complaint.

89. The CITY had a duty to adequately train, supervise and discipline their deputy officers in order to protect members of the public, including PLAINTIFF, from being unlawfully searched and arrested, while harmed by police officers unnecessarily.

90. The CITY was deliberately indifferent to such duties and thereby proximately caused injury to PLAINTIFF as complained herein.

91. PLAINTIFF In addition, the public inaction by the department has created an atmosphere in which officers believe they may act with impunity when engaging in unlawful conduct, as the CITY itself seems uninterested in complying with CITY policies and procedures.

    WHEREFORE, PLAINTIFF prays for relief as hereinafter set forth.

### THIRD CAUSE OF ACTION
**(Battery)**
**(PLAINTIFF v. ALL DEFENDANTS)**

92. PLAINTIFF re-alleges and incorporates by reference paragraph's 1-49 of this Complaint.

93. The present action is brought pursuant to common law torts, as public employees, ULLRICH and DOES 1-50 are liable for injuries caused by their acts or omissions to the same extent as a private person. At all times mentioned herein, ULLRICH and DOES 1-50 were acting within the course and scope of their employment and/or agency with CITY. As such, Defendants CITY and VALENTI are liable in *respondeat superior* for the injuries caused by the acts and omissions of ULLRICH and DOES 1-50.

94. CITY, ULLRICH and DOES 1-50 perpetrated an intentional vicious physical attack on PLAINTIFF, and repeatedly battered her by forcefully grabbing him. ULLRICH and DOES 1-50 had the requisite intent to make physical contact and inflict pain and suffering on PLAINTIFF.

95.  PLAINTIFF has a right to be free from unwanted or unwarranted contact with his person and this right was violated by Defendants action or omissions, inclusive.

    WHEREFORE, PLAINTIFF prays for relief as hereinafter set forth.

### FOURTH CAUSE OF ACTION
**(Assault)**
**(PLAINTIFF v. ALL DEFENDANTS)**

96. PLAINTIFF re-alleges and incorporates by reference paragraph's 1-49 of this Complaint.

97. The present action is brought pursuant to common law torts, ULLRICH and DOES 1-50 are liable for injuries caused by their acts or omissions to the same extent as a private person. At all times mentioned herein ULLRICH and DOES 1-50 were acting within the course and scope of their employment and/or agency with CITY. As such, Defendants CITY and VALENTI are liable in *respondeat superior* for the injuries caused by the acts and omissions of DOES 1-50.

98. ULLRICH and DOES 1-50 caused PLAINTIFF to fear that he was going to be severely harmed.

99. DEFEDNATNS grabbed PLAINTIFF without cause. DEFENDANTS' conduct was neither privileged nor justified under statute or common law.

100. As a result of DEFENDANTS' acts, PLAINTIFF was in fact placed in great apprehension of imminent harmful and offensive contact with her person.

101. At no time did PLAINTIFF consent to any of the acts by the DEFENDANTS as alleged hereinabove.

102. DEFENDANTS conduct as described above caused PLAINTIFF to be apprehensive that would subject him to further intentional invasions of his right to be free from offensive and harmful contact and demonstrated that at all time's herein, DEFENDANTS had a present ability to subject him to an intentional offensive and harmful touching.

103. As a direct and proximate result of DEFENDANTS unlawful conduct as alleged hereinabove, PLAINTIFF has suffered physical injury, sever emotional distress, humiliation, embarrassment, mental and emotional distress, anxiety, and economic harm.

104. PLAINTIFF has a right to be free from fear of unwanted or unwarranted contact with his person and his rights were violated by DEFENDANTS' action or omissions, inclusive.

   WHEREFORE, PLAINTIFF prays for relief as hereinafter set forth.


**FIFTH CAUSE OF ACTION**

**(Intentional Infliction of Emotional Distress)**

**(PLAINTIFF v. ALL DEFENDANTS)**

105.    PLAINTIFF re-alleges and incorporates by reference paragraph's 1-49 of this Complaint.

106.   The present action is brought pursuant common law torts as public employees, ULLRICH  and DOES 1-50 are liable for injuries caused by their acts or omissions to the same extent as a private person. At all times mentioned herein, ULLRICH and DOES 1-50 were acting within the course and scope of their employment and/or agency with CITY. As such, Defendants CITY and VALENTI are liable in *respondeat superior* for the injuries caused by the acts and omissions of ULLRICH and DOES 1-50 pursuant to common law torts.

107.    ULLRICH and DOES 1-50 perpetrated a vicious physical attack on PLAINTIFF, by grabbing him. The DEFENDANTS then, conspired to inflict further emotional distress, beyond the beating, by threatening legal action against PLAINTIFF and make false claims against her.

108.    PLAINTIFF has a right to be free from such callous actions aimed at inflicting mental and emotional damage and this right was violated by said Defendants, inclusive.

WHEREFORE, PLAINTIFF prays for relief as hereinafter set forth.

**SIXTH CAUSE OF ACTION**

**(Negligence)**

**(PLAINTIFF v. ALL DEFENDANTS)**

109.   PLAINTIFF re-alleges and incorporates by reference paragraph's 1-49 of the Complaint, except for any and all allegations of intentional, malicious, extreme, outrageous, wanton, or oppressive conduct by defendants, and any and all allegations requesting punitive damages.

110.   In the alternative, PLAINTIFF alleges DEFENDANTS' negligent actions and/or negligent failure to act within the scope and course of their employment with the CITY, as set forth hereinabove approximately caused severe physical injury to PLAINTIFF.

111. The present action is brought pursuant to common law torts as public employees, **ALL DEFENDANTS** are liable for injuries caused by their acts or omissions to the same extent as a private person. At all times mentioned herein, **ALL DEFENDANTS** were acting within the course and scope of their employment and/or agency with CITY. As such, Defendants CITY and VALENTI are liable in *respondeat superior* for the injuries caused by the acts and omissions of **ALL DEFENDANTS**.

112. As an actual and proximate result of said Defendants' negligence and physical injuries sustained by PLAINTIFF, PLAINTIFF has sustained pecuniary loss resulting from the loss of comfort, society, attention, and services, in an amount to be determined at trial.

WHEREFORE, PLAINTIFF prays for relief as hereinafter set forth.

## SEVENTH CAUSE OF ACTION

**(Negligent Hiring, Retention, Training, Supervision and Discipline)**
**(PLAINTIFF v. CITY)**

113. PLAINTIFF incorporates the foregoing paragraphs by reference, as though fully reproduced herein, except for any and all allegations of intentional, malicious, extreme, outrageous, wanton, or oppressive conduct by defendants, and any and all allegations requesting punitive damages.

114. PLAINTTIF claims that he was wrongfully restrained at the scene of the incident and later detained by DEFENDANTS at Kenton County Jail.

115. The Defendants intentionally deprived PLAINTIFF of his freedom of movement by use of physical barriers and threats of force, and unreasonable duress. The restraint confinement and dentition of Plaintiff.

116. The Defendants conduct was a substantial factor in causing the PLAINTIFF harm.

WHEREFORE, PLAINTIFF prays for relief as hereinafter set forth.

## EIGHTH CAUSE OF ACTION
### (Supervisor Liability- 42 U.S.C. § 1983)
### (PLAINTIFF v. VALENTI)

117. PLAINTIFF incorporates the foregoing paragraphs by reference, as though fully reproduced herein, except for any and all allegations of intentional, malicious, extreme, outrageous, wanton, or oppressive conduct by defendants, and any and all allegations requesting punitive damages.

118. **VALENTI** was employed by CITY as Chief for the Covington Police Department.

119. At all relevant times **VALENTI** was responsible for hiring, transfer, suspension, promotion, discharge, assignment, reward, or discipline of other department members, and directing the work of other members.

120. At all relevant times **VALENTI** was under an oath as a law enforcement officer to serve the community; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation and the peaceful against violence or disorder; and to respect the constitutional rights of all to liberty, equality, and justice.

121. **VALENTI** was personally involved in the constitutional deprivation of PLAINTIFF's constitutional rights by participating in the act of covering up evidence and not properly preserving phone text messages and witness statements in an attempt to criminally charge PLAINTIFF.

122. **VALENTI** was personally involved in a sufficient casual connection of PLAINTIFF's constitutional rights by their approval of fabricated and factious police incident reports.

123. **VALENTI** was reckless and had a callous indifference for the rights of PLAINTIFF.

124. **VALENTI** acts directly caused PLAINTIFF harm.

WHEREFORE, PLAINTIFF prays for relief as hereinafter set forth.

## NINTH CAUSE OF ACTION

### (False Arrest)

### (PLAINTIFF v. ULLRICH)

125.  PLAINTIFF incorporates all preceding paragraphs as if fully set forth herein.

126.  PLAINTIFF DAMIEN C. had a clearly established right under the Fourth and Fourteenth Amendments to be free from arrest without probable cause.

127.  On or about September 23, 2024, Officer ULLRICH stopped PLAINTIFF for a routine traffic violation related to cellphone use.

128.  PLAINTIFF complied by providing his license, registration, and insurance.

129.  Without justification, Officer ULLRICH called for backup and ordered PLAINTIFF to exit the vehicle. When PLAINTIFF calmly asked why, officers forcibly pulled him through the window, handcuffed him, and cut his seatbelt.

130.  PLAINTIFF never resisted, posed no threat, and attempted to de-escalate the encounter.

131.  Officers arrested PLAINTIFF for "obstructing police" despite a lack of probable cause, and body camera footage contradicts their claims.

132.  The arrest was unlawful, excessive, and violated PLAINTIFF's Fourth Amendment rights.

133.  As a result, PLAINTIFF suffered physical pain, emotional distress, and reputational harm.

134.  PLAINTIFF seeks compensatory and punitive damages, as well as attorney's fees under 42 U.S.C. § 1988.

## TENTH CAUSE OF ACTION

### (False Imprisonment)

### (PLAINTIFF v. ULLRICH)

135.  PLAINTIFF incorporates all preceding paragraphs as if fully set forth herein.

136. Under Kentucky law, false imprisonment is the unlawful detention or restraint of an individual against their will, without legal authority or justification. See *Banks v. Fritsch*, 39 S.W.3d 474, 480 (Ky. Ct. App. 2001).

137. PLAINTIFF was unlawfully detained by Officer ULLRICH and other officers with no probable cause or legal justification.

138. PLAINTIFF complied with all lawful instructions during the traffic stop and did not pose a threat, attempt to flee, or resist arrest.

139. Despite this, officers ordered PLAINTIFF out of his vehicle without explanation, physically restrained him, and detained him without legal cause.

140. PLAINTIFF was held against his will, handcuffed, forcibly removed from his vehicle, and subjected to an unreasonable seizure of his person.

141. The detention was not supported by any valid warrant, probable cause, or other lawful authority, and no reasonable officer would have believed such detention was lawful under the circumstances.

142. As a direct and proximate result of this unlawful confinement, PLAINTIFF suffered physical pain, emotional distress, humiliation, and loss of liberty.

143. The conduct of the officers was intentional, willful, and carried out with reckless disregard for PLAINTIFF's rights under Kentucky law.

144. PLAINTIFF is entitled to compensatory and punitive damages for false imprisonment under Kentucky law, along with any other relief the Court deems just and proper.]


### ELEVENTH CAUSE OF ACTION
### (MALICOUS PROSECUTION)
### (PLAINTIFF v. ULLRICH)

145. PLAINTIFF  re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

146. PLAINTIFF acting under color of state law and in his official capacity as a police officer for the Covington Police Department, knowingly and maliciously initiated criminal charges against Plaintiff PLAINTIFF without probable cause.

147. On the date in question, DAMIEN C. was driving to work when he was pulled over by ULLRICH. PLAINTIFF was cooperative and provided his license, registration, and insurance as requested.

148. Despite PLAINTIFF compliance, ULLRICH escalated the encounter by falsly and knowingly claiming that PLAINTIFF smelled of marijuana and forced PLAINTIFF to exit his vehicle, and forcibly removing him through the vehicle window—without legal justification or cause.

149. ULLRICH falsely claimed that PALINTIFF refused lawful commands and obstructed governmental operations, resulting in PLAINTIFF being placed under arrest and charged.

150. These charges were based on fabricated allegations and contradict clear and objective body camera footage that showed PLAINTIFF attempting to de-escalate the situation, communicating clearly with officers, and not engaging in any unlawful conduct.

151. The alleged justification for the stop and arrest—including the claim of a smell of marijuana—was never substantiated by any evidence, and no contraband were recovered.

152. The charges against PLAINTIFF were ultimately dismissed, constituting a favorable termination for purposes of a malicious prosecution claim.

153. PLAINTIFF actions were taken in bad faith, with malice and without probable cause, in violation of PLAINIFF'S rights under the Fourth and Fourteenth Amendments to be free from unlawful prosecution and deprivation of liberty.

154. As a result of this malicious prosecution, PLAINTIFF suffered emotional distress, damage to his reputation, economic harm, and a violation of his constitutional rights.

155. PLAINTIFF is entitled to compensatory damages and, because ULLRICH's conduct was intentional, malicious, and reckless, punitive damages as well.

**TWELTH CAUSE OF ACTION**

**(FABRICATION OF EVIDENCE)**

**(PLAINTIFF v. ULLRICH)**

156. PLAINTIFF re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

157. Defendant ULLRICH, acting under color of state law and in his official capacity, knowingly fabricated evidence against PLAINTIFF with the intent to justify an unlawful arrest and prosecution.

158. Specifically, ULLRICH submitted false police reports and official statements claiming that PLAINTIFF obstructed governmental operations and resisted arrest, when in fact PLAINTIFF was cooperative and sought to understand why he was being removed from his vehicle.

159. ULLRICH's statements were contradicted by objective video footage from his body camera, which showed PLAINTIFF attempts to comply and de-escalate, as well as the use of excessive force by the officers, including cutting PLAINTIFF seatbelt and physically pulling him through the window.

160. ULLRICH also falsely asserted that there was a smell of marijuana emanating from PLAINTIFF vehicle, yet no marijuana or drug paraphernalia was recovered, and no tests or evidence substantiated that claim.

161. The fabricated statements were material to the initiation and continuation of criminal proceedings against PLAINTIFF and directly caused his arrest and prosecution.

162. The use of knowingly false statements and omissions deprived PLAINTIFF of due process under the Fourteenth Amendment and subjected him to an unjust and constitutionally infirm criminal proceeding.

163. As a direct and proximate result of ULLRICH's fabrication of evidence, PLAINTIFF suffered physical harm, emotional distress, reputational damage, unlawful arrest, and economic losses.

164. PLAINTIFF seeks compensatory damages for these injuries and further seeks punitive damages due to the deliberate and egregious nature of ULLRICH's misconduct.

## TAMELA SCOTT:
## FIRST CAUSE OF ACTION
## (MALICOUS PROSECUTION)
## (SCOTT v. ULLRICH)

165. Plaintiff  SCOTT re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

166. Defendant ULLRICH, acting under color of state law and in his official capacity as a police officer with the Covington Police Department, knowingly and maliciously initiated criminal charges against Plaintiff SCOTT without probable cause.

167. On or about April 6, 2024, while parked at a Taco Bell as the designated driver for her then-boyfriend, SCOTT was approached by Covington police officers, and asked to present identification.

168. SCOTT attempted to retrieve her identification from her purse, but officers aggressively shined a flashlight into her eyes, obstructing her ability to see. She asked the officers to redirect the light but was refused.

169. Rather than allowing her to comply, officers escalated the encounter without cause, physically reaching into her vehicle and grabbing her arm.

170. Despite her non-threatening behavior and full cooperation, officers used a taser on SCOTT multiple times in violation of department policy and without justification.

171. Upon arriving at the scene, ULLRICH falsely claimed that SCOTT was under the influence of drugs or alcohol, despite no field tests or evidence to support this assertion.

172. As a result of these knowingly false allegations, SCOTT was arrested and charged with multiple criminal offenses that she did not commit.

    1. These charges were later dismissed or otherwise resolved in her favor, satisfying the requirement of a favorable termination.

173. The charges were initiated and maintained based on fabricated and unsupported allegations by ULLRICH and others, made maliciously and without probable cause.

174. As a direct and proximate result of the malicious prosecution by ULLRICH, SCOTT suffered emotional distress, reputational harm, financial loss, physical injury, and a deprivation of her liberty.

SCOTT is entitled to compensatory damages and, because the actions of ULLRICH were willful, malicious, and in bad faith, punitive damages as well.

**SECOND CAUSE OF ACTION**
**(FABRICATION OF EVIDENCE)**
**(SCOTT v. ULLRICH)**

175. SCOTT re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

176. ULLRICH, acting under color of state law and in his official capacity, knowingly fabricated evidence against SCOTT in order to justify her unlawful arrest and prosecution.

177. ULLRICH falsely asserted that SCOTT was under the influence of alcohol or drugs during the incident on April 6, 2024, despite a complete lack of supporting evidence and no observable signs of impairment.

178. No breathalyzer, blood test, or field sobriety test was administered to confirm impairment, nor was any contraband recovered from SCOTT or her vehicle.

179. ULLRICH's fabricated statement was knowingly false and material to the decision to arrest and prosecute SCOTT. His assertions were included in official police reports and were relied upon in the filing of criminal charges.

180. The fabricated evidence directly resulted in SCOTT's arrest, pretrial detention, and prolonged prosecution, all in violation of her constitutional rights under the Fourteenth Amendment to be free from unjust and arbitrary deprivation of liberty.

181. As a direct and foreseeable result of ULLRICH's conduct, SCOTT was subjected to unlawful detention, reputational harm, emotional distress, and financial injury.

182. SCOTT seeks compensatory damages for the injuries she sustained, and, because ULLRICH's conduct was deliberate, reckless, and motivated by discriminatory animus, she also seeks punitive damages.


### THIRD CAUSE OF ACTION
**(Monell Claim: 42 U.S.C. § 1983)**
**(SCOTT v. CITY)**

183. SCOTT re-alleges and incorporates by reference paragraphs 1–87 of this Complaint as though fully set forth herein.

184. Defendant CITY OF COVINGTON ("CITY") had a constitutional duty to properly train, supervise, and discipline its officers—including Defendant ULLRICH—to prevent unlawful seizures, arrests, and the fabrication of evidence in violation of the Fourth and Fourteenth Amendments.

185. Prior to the incident involving SCOTT, the CITY was aware that ULLRICH had a documented history of making false or unsubstantiated statements to justify stops and arrests, including repeated allegations regarding the odor of marijuana or impairment without corroborating evidence.

186.  Despite this knowledge, the CITY failed to take appropriate corrective action, including conducting internal investigations, implementing remedial training, or imposing discipline. This failure amounted to deliberate indifference to the constitutional rights of individuals subjected to policing by its officers.

187.  On April 6, 2024, ULLRICH arrived on the scene after officers had escalated an interaction with SCOTT. Without conducting any sobriety testing or finding physical evidence, ULLRICH falsely alleged that SCOTT was under the influence of drugs or alcohol and included this fabrication in official police reports.

188.  These knowingly false statements were material to the decision to arrest and prosecute SCOTT and were used to justify criminal charges that lacked any factual or legal basis.

189.  The CITY's custom, policy, or practice of tolerating or ignoring the fabrication of evidence by its officers—including but not limited to ULLRICH—was the moving force behind the constitutional violations SCOTT suffered.

190.  As a direct and proximate result of the CITY's deliberate indifference, SCOTT was subjected to false arrest, fabricated allegations, prolonged prosecution, emotional harm, reputational damage, and other injuries.

191.  SCOTT seeks compensatory damages, and, due to the CITY's willful disregard of her constitutional rights, punitive damages and attorneys' fees as permitted by law.


### JURY DEMAND

192.  **PLAINTIFF hereby demands a jury trial**.


### PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF prays for relief, as follows:

For general damages in a sum according to proof;

For special damages, including but not limited to, past, present and/or future wage loss,

medical expenses and other special damages to be determined according to proof;

For punitive and exemplary damages against each defendant in a sum according to proof;

Any and all permissible statutory damages;

For costs of suit and reasonable attorney's fees pursuant to 42 U.S.C. § 1988 and U.S.C. §

794(a);

For all other relief to which the Court deems just and proper.

**Dated: June 11, 2025**

_____

Attorney for Plaintiff

**Proof of Service**

I, Kaylah Bozman, hereby certify that on this 11th day of June 2025, I served a true and correct copy of the First Amended Complaint for Violation of Title 42 USC § 1983, *Monell* Claim, Violation of Kentucky Statutes, Violation of Common Law Torts, and Damages, by the following methods:

Via Email and U.S. Certified Mail, postage fully prepaid and properly addressed to:

City of Covington
Covington City Hall
20 West Pike Street
Covington, KY 41011

Colonel Brian Valenti
20 West Pike Street
Covington, KY 41011

Doug Ullrich
20 West Pike Street
Covington, KY 41011

Jeff Mando, Esq.
Adams Law
40 West Pike Street
Covington, KY 41011

I declare under penalty of perjury under the laws of the Commonwealth of Kentucky that the foregoing is true and correct.

Dated: June 11, 2025

/s/ Kaylah Bozman

Kaylah Bozman